UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYKIA CLAYBORNE,<br><br>        Plaintiff,<br><br>    v.<br><br>SSA GROUP, LLC,<br><br>        Defendant. | Case No. 25-cv-01617-DMR<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 9 |

Plaintiff Tykia Clayborne brings this employment discrimination and retaliation case against Defendant SSA Group, LLC ("SSA"). Defendant moves to compel this matter to arbitration. [Docket Nos. 9 (Mot.); 15 (Reply).] Plaintiff opposes. [Docket No. 13 (Opp'n).] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, Defendant's motion is denied.

**I.    BACKGROUND**

    **A.    Allegations and Procedural History**

Clayborne was employed by SSA from January 1, 2023 to March 8, 2023. [Docket No. 1-4 (Compl.) ¶ 16.] On February 1, 2023, Clayborne started working at the Oakland Zoo in the position of Food and Beverage Manager. *Id.* ¶¶ 17-18. She alleges she was wrongfully terminated on March 8, 2023 because she is a woman and because she made complaints about gender discrimination and health and safety risks in the workplace.

Clayborne filed a complaint in state court on December 12, 2024, alleging six claims: 1) gender discrimination in violation of Cal. Gov. Code § 12900 *et seq.* ("FEHA"); 2) retaliation in violation of FEHA; 3) failure to prevent discrimination and/or retaliation in violation of FEHA; 4) retaliation for making a complaint about working conditions under Cal. Lab. Code § 6310; 5) retaliation for reporting an illegal violation under Cal. Lab. Code § 1102.5; and 6) wrongful

termination in violation of public policy. SSA filed an answer and timely removed the case to federal court based on diversity jurisdiction on February 14, 2025. [Docket No. 1 (Removal Notice) ¶¶ 4-6, 14, 21.] SSA filed this motion to compel arbitration and stay court action on February 20, 2025.

### B. The Arbitration Agreement

As part of the onboarding process after Clayborne was hired, she created an online account on SSA's internal learning management system called Dayforce. [Docket No. 9-2 (Cveta Chydzinski Decl., Feb. 19, 2025) ¶ 6.] Clayborne's Dayforce account gave her access to her onboarding documents, which included two documents titled "California Employee Handbook" and "National Employee Handbook." *Id.*; [Docket Nos. 9-3 (Handbook Cal.); 9-4 (Handbook Nat'l)]. She was given three days to review the onboarding documents, ask questions, and acknowledge the onboarding documents. Chydzinski Decl. ¶ 6. If Clayborne needed additional time to review the documents, she would have been granted such time, but she did not ask for extra time or raise any questions about arbitration. *Id.*

To acknowledge the Handbooks, Clayborne was required to view a page in her Dayforce account which stated:

> I acknowledge that I have received and have had an opportunity to read a copy of the SSA Employee Handbook. I understand that this Handbook is solely for the purposes of summarizing the Company's current policies, benefits and rules, that it is not a contract or enforceable promise or guarantee of any kind, whether of employment or of any specific terms or conditions of employment or procedural rights, and that any or all portions of this Handbook may be amended or eliminated from time to time without notice. I understand that my employment with the Company is at-will and can be terminated either by me or by the Company at any time, for any reason, with or without notice.
>
> I further understand and acknowledge SSA's Equal Employment Opportunity and Harassment Policies and the potential consequence of violating such policy. I further understand and acknowledge the Arbitration Agreement, defined in the Employee Handbook.
>
> If you have any questions about the employee handbook, please reach out to PeopleDepartment@thessagroup.com or call us at 303-322-3031.

*Id.* ¶ 8; [Docket Nos. 9-5 (E-Signature Cal.); 9-6 (E-Signature Nat'l)]. She then had to electronically check a box stating: "I accept and acknowledge the company policy above," before

1 moving on to the next onboarding document. Chydzinski Decl. ¶ 8. On January 2, 2023,
2 Clayborne checked the box accepting and acknowledging the Handbooks. *Id.*
3   The California Employee Handbook and National Employee Handbook have slightly
4 different terms but are structured the same way, and they contain the same content described
5 below. The Handbooks are organized under headings such as "Introduction," "Employee
6 Benefits," "Leaves of Absences," etc. Handbook Cal. 2; Handbook Nat'l 2. Under the
7 "Introduction" heading, there is a subheading titled "Purpose of This Handbook," which states:
8 "This handbook is not a contract, nor does it create a contract, and nothing contained in this
9 handbook is an enforceable promise of any kind. Rather, this handbook is designed to inform you
10 about the current policies, benefits, rules, and procedures that apply to SSA's operation. It is
11 intended solely for informational purposes. This handbook, and the policies and statements it
12 contains, may be revised by SSA at any time, at its sole and absolute discretion, for any reason,
13 without notice." Handbook Cal. 10; Handbook Nat'l 10.
14   Under the "Conclusion" heading at the end of the Handbooks, there are three subheadings:
15 "Enforceability," "Arbitration Agreement," and "Summary." Handbook Cal. 46; Handbook Nat'l
16 40. The Arbitration Agreement in each Handbook consists of the following language:

> Any dispute, controversy or claim arising out of, relating to or in connection with your employment shall be finally resolved by arbitration, pursuant to the employment dispute rules of the American Arbitration Association, unless that claim is not allowed to be arbitrated pursuant to law. Any arbitration conducted pursuant to this handbook shall be conducted in the county where the employee works or another mutually agreeable location, before a single arbitrator agreed to by the parties. Upon filing of a dispute, claim, or lawsuit, either party shall have the opportunity to serve the other party with a written notice to arbitrate pursuant to this section of the handbook, within fifteen (15) calendar days of receipt of the notice that a dispute, claim, or lawsuit has been filed or intends to be filed. If the parties cannot agree on an arbitrator within thirty (30) days from receipt of a notice to arbitrate, each party shall select an arbitrator and those arbitrators shall agree on a third arbitrator, who shall preside over the dispute. The arbitrator shall have the power to rule on any challenge to its own jurisdiction or to the validity or enforceability of any portion of the agreement to arbitrate. The parties agree to arbitrate solely on an individual basis, and that this agreement does not permit class arbitration or any claims brought as a plaintiff or class member in any class or representative arbitration proceeding. The arbitral tribunal may not consolidate more than one person's claims and may not otherwise preside over any form of a representative or class proceeding. Notwithstanding the tribunal's power to rule on its own

3

> jurisdiction and the validity or enforceability of the agreement to arbitrate, the tribunal has no power to rule on the validity or enforceability of the agreement to arbitrate solely on an individual basis.

Handbook Cal. 46; Handbook Nat'l 40.

The last page of each Handbook is a signature page titled "Certificate of Receipt." The language states:

> I acknowledge that I have received and have had an opportunity to read a copy of the SSA Employee Handbook. I understand that this Handbook is solely for the purposes of summarizing the Company's current policies, benefits and rules, that it is not a contract or enforceable promise or guarantee of any kind, whether of employment or of any specific terms or conditions of employment or procedural rights, and that any or all portions of this Handbook may be amended or eliminated from time to time without notice. I understand that my employment with the Company is at-will and can be terminated either by me or by the Company at any time, for any reason, with or without notice.
>
> By initialing here, _____, I further understand and acknowledge SSA's Equal Employment Opportunity and Harassment Policies, defined on pages [. . .]¹ of the Employee Handbook, and the potential consequence of violating such policy.
>
> By initialing here, _____, I further understand and acknowledge the Arbitration Agreement, defined on page [. . .] of the Employee Handbook.

Handbook Cal. 47; Handbook Nat'l 41. Although the Certificate of Receipt page includes a date and employee's signature line, SSA did not offer any Handbook signed by Plaintiff.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Enacted for the purpose of enforcing written arbitration agreements according to their own terms, the FAA embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Section 4 of the FAA ensures that "private agreements to arbitrate are enforced according to their terms," *Stolt–Nielsen*, 559 U.S. at 682 (quoting *Volt*, 489 U.S. at 479), by expressly authorizing a party to

---

[1] The referenced page numbers are different for the two Handbooks, but the text is otherwise the same.

4

1   an arbitration agreement to petition a United States district court for an order directing that
2   "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

3         The FAA provides that an arbitration agreement "shall be valid, irrevocable, and
4   enforceable, save upon such grounds as exist at law or in equity for the revocation of any
5   contract." 9 U.S.C. § 2. "The final clause of § 2, generally referred to as the savings clause,
6   permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as
7   fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive
8   their meaning from the fact that an agreement to arbitrate is at issue." *Poublon v. C.H. Robinson*
9   *Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S.
10  333, 339 (2011) (internal quotation marks omitted)). "By its terms, the [FAA] leaves no place for
11  the exercise of discretion by a district court, but instead mandates that district courts *shall* direct
12  the parties to proceed to arbitration on issues as to which an arbitration agreement has been
13  signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)
14  (citing 9 U.S.C. §§ 3, 4).

15        "In deciding whether to compel arbitration under the FAA, a court's inquiry is limited to
16  two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether
17  the agreement encompasses the dispute at issue.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999
18  (9th Cir. 2021) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th
19  Cir. 2000)). "If both conditions are met, 'the [FAA] requires the court to enforce the arbitration
20  agreement in accordance with its terms.'" *Id.* (quoting *Chiron*, 207 F.3d at 1130). "[S]tate law . .
21  . is applicable if that law arose to govern issues concerning the validity, revocability, and
22  enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492, fn. 9 (1987)
23  (emphasis omitted).

24  **III.   DISCUSSION**

25        Clayborne argues that SSA has failed to establish the existence of a valid arbitration
26  agreement between the parties. Opp'n 2-8. Alternatively, she contends that if an arbitration
27  agreement exists, it is unenforceable because it is unconscionable. *Id.* at 8-14.

28        The party seeking to compel arbitration bears the burden of proving by a preponderance of

United States District Court
Northern District of California

the evidence that an agreement to arbitrate exists. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir.), cert. denied, 138 S. Ct. 203 (2017). Because Clayborne was employed in California, we look to California contract law to evaluate the arbitration agreement. *See Adams,* 279 F.3d at 892. "An essential element of any contract is the consent of the parties, or mutual assent. Further, the consent of the parties to a contract must be communicated by each party to the other. Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Esparza v. Sand & Sea, Inc.,* 2 Cal. App. 5th 781, 788 (2016) (quotations and internal citations omitted). "To the extent there is any ambiguity in this language we construe it against defendants, the drafters of the language." *Id.* at 789.

It is undisputed that Clayborne electronically checked a box confirming that she "accept[s] and acknowledge[s] the company policy above." E-Signature Cal.; E-Signature Nat'l. Clayborne argues, however, that the language is ambiguous as to whether acknowledging the Handbooks manifested her assent to be bound by the Arbitration Agreement. Both the e-signature policy acknowledgement page and the Handbooks themselves contain the following phrase: "I understand that this Handbook is solely for the purposes of summarizing [SSA's] current policies, benefits and rules, [and] that it is not a contract or enforceable promise or guarantee of any kind, whether of employment or of any specific terms or conditions of employment or procedural rights." E-Signature Cal.; E-Signature Nat'l; Handbook Cal. 47; Handbook Nat'l 41.[2] The documents also state that the employee "understand[s] and acknowledge[s] the Arbitration Agreement, defined in the Employee Handbook." *Id.* Plaintiff argues that to "understand and acknowledge" is different from consenting to be bound by the terms of a contract. She points out that the documents do not explicitly exclude the Arbitration Agreement from the above statement that the Handbook is "not a contract." Opp'n 4-7. Clayborne argues that because it is ambiguous whether the Arbitration Agreement was intended to be a binding contract, there was no mutual

---

[2] This is reinforced by the stated purpose of the Handbooks, which is explicitly *not* to create a contract. Handbook Cal. 10; Handbook Nat'l 10.

6

assent, and no enforceable contract was formed. *Id.* at 4.

Clayborne cites *Esparza v. Sand & Sea, Inc.,* 2 Cal. App. 5th 781 (2016), the facts of which are similar to this case. In *Esparza*, the plaintiff signed an employee handbook which included a two-page section titled "Agreement to Arbitration." *Id.* at 784-85. The section included the language: "I understand and agree to this binding arbitration provision, and both I and the company give up our right to trial by jury of any claim I or the company may have against each other." *Id.* The first page of the handbook stated: "this handbook is not intended to be a contract (express or implied), nor is it intended to otherwise create any legally enforceable obligations on the part of the Company or its employees." *Id.* at 784. The page in the handbook signed by the plaintiff stated: "This handbook is designed to provide information to employees of [the defendant] regarding various policies, practices and procedures that apply to them including our Arbitration Agreement. . . . Neither this manual nor its contents constitute, in whole or in part, either an express or implied contract of employment with [the defendant] or any employee. . . . I acknowledge that I have received [the defendant's] Employee Handbook. I also acknowledge that I am expected to have read the Employee Handbook in its entirety no longer after one week after receiving it." *Id.* at 785. *Esparza* found that the plaintiff did not assent to the arbitration agreement by signing the employee handbook. *Id.* at 789. It held that the reasonable interpretation of the first page of the handbook was that the handbook was not intended to create any legally enforceable obligations, including an obligation to arbitrate. *Id.* The court also found that the language of the acknowledgement suggested the handbook was merely informational, and not a binding contract. *Id.* at 790.

Here, as in *Esparza*, the Arbitration Agreement contradicts the explicit language that the Handbooks are "not a contract or enforceable promise or guarantee of any kind, whether of employment or of any specific terms or conditions of employment or procedural rights." E-Signature Cal.; E-Signature Nat'l; Handbook Cal. 47; Handbook Nat'l 41. It is reasonable to interpret the Handbooks' language as communicating that they are not intended to create any "enforceable promise or guarantee" of "terms or conditions of employment or procedural rights," including the mandatory arbitration procedures. Indeed, the policy acknowledgement page states:

7

1  "I understand that this Handbook is solely for the purposes of summarizing the [Defendant's]
2  current policies, benefits and rules." E-Signature Cal.; E-Signature Nat'l; Handbook Cal. 47;
3  Handbook Nat'l 41. This is reinforced by the stated purpose of the Handbooks, which explicitly
4  states that the Handbooks are "intended solely for informational purposes." Handbook Cal. 10;
5  Handbook Nat'l 10. This suggests that the Handbooks were informational, as in *Esparza.* It is
6  ambiguous whether the Handbooks were intended to create any contract, including a contract to
7  arbitrate. The court construes the ambiguity against SSA as the drafter of the language, and finds
8  that no arbitration agreement was formed. *See Esparza,* 2 Cal. App. 5th at 789.

9        SSA does not meaningfully rebut Plaintiffs' arguments on contract formation. It attempts
10  to distinguish *Esparza* by pointing out that SSA's policy acknowledgement page refers to the
11  Arbitration Agreement: "I further understand and acknowledge the Arbitration Agreement,
12  defined in the Employee Handbook." E-Signature Cal.; E-Signature Nat'l. Merely referencing
13  the Arbitration Agreement in the policy acknowledgment page is insufficient. *See Esparza,* 2 Cal.
14  App. 5th at 785 (finding no agreement to arbitrate where policy acknowledgement page stated:
15  "This handbook is designed to provide information to employees of [the defendant] regarding
16  various policies, practices and procedures that apply to them including our Arbitration
17  Agreement."). As emphasized in *Esparza*, nothing in the policy acknowledgement page in that
18  case or in this one indicated that the employee was agreeing to be bound by the arbitration
19  agreement, or that the agreement was excluded from the language stating that nothing in the
20  handbook was legally binding on the parties. *Id.* at 791. SSA's policy acknowledgement only
21  requires the employee to "understand and acknowledge" the Arbitration Agreement as being
22  defined in the Handbooks; the policy acknowledgement does not indicate an intent to bind the
23  employee to the terms of the Arbitration Agreement. Nor is the Arbitration Agreement excluded
24  from the language that the Handbooks are "not a contract or enforceable promise or guarantee of
25  any kind."

26        SSA also cites *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373 (2016), in which the
27  court found that an arbitration agreement set forth in an employee handbook created a binding
28  contract. The employee handbook in *Harris* did not include ambiguous language regarding

8

1  whether a contract was formed. To the contrary, the employee handbook in *Harris* explicitly
2  stated: "Confirmation of receipt and agreement to [mandatory binding arbitration] is an absolute
3  prerequisite to your hiring by, and continued employment with, the Company. . . . If, for any
4  reason, an applicant fails to execute the Agreement to Arbitrate yet begins employment, that
5  employee will be deemed to have consented to the Agreement to Arbitrate by virtue of receipt of
6  this Handbook." *Id.* at 377. The arbitration agreement itself, set forth in an appendix to the
7  handbook, stated: "If Employee voluntarily continues his/her employment with [the defendant]
8  after the effective date of this Policy . . . Employee will be deemed to have knowingly and
9  voluntarily consented to and accepted all of the terms and conditions set forth herein without
10 exception." *Id.* at 379. No similar language exists in SSA's Handbooks. Indeed, *Esparza*
11 distinguished *Harris* for the same reason. *Esparza,* 2 Cal. App. 5th at 790-91. Unlike in *Harris*,
12 the language of SSA's Handbooks is ambiguous regarding whether a contract was formed.

13 "'Efforts by an employer to have it both ways by claiming that a handbook is not a contract
14 [(as here)] but that an employee acknowledging receipt of a handbook has contracted to arbitrate
15 any disputes with his or her employer can backfire.' Courts have determined that such a provision
16 renders the matter ambiguous, and that the ambiguity is to be construed against the employer that
17 drafted the document." *Sparks v. Vista Del Mar Child & Fam. Servs.,* 207 Cal. App. 4th 1511,
18 1522, 145 Cal. Rptr. 3d 318, 326 (2012), *abrogated on other grounds by Harris,* 248 Cal. App. 4th
19 373 (quoting Domke on Commercial Arbitration (3d. ed. 2012) § 16:11, p. 16-67). SSA cannot
20 "have it both ways" here by claiming that the Handbooks do not create "a contract or enforceable
21 promise or guarantee of any kind" while simultaneously asserting that the Handbooks created a
22 binding arbitration agreement. *See* Handbook Cal. 47; Handbook Nat'l 41.

23 //
24 //
25 //
26 //
27 //
28 //

9

The court finds that SSA failed to meet its burden to establish the existence of an enforceable contract to arbitrate. *See Norcia*, 845 F.3d at 1283. The motion to compel arbitration and stay court action is denied. The court does not reach the parties' other arguments regarding unilateral modification and unconscionability because they are moot.

**IT IS SO ORDERED.**

Dated: May 1, 2025

_____
Donna M. Ryu
Chief Magistrate Judge